IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| JERRY RYALS,                              )<br>                                                    )<br>                                                    )<br>                   Plaintiff,             )<br>                                                    )<br>v.                                                )<br>                                                    )<br>MICHAEL J. ASTRUE,[1]             )<br>COMMISSIONER OF SOCIAL      )<br>SECURITY,                                 )<br>                                                    )<br>                   Defendant.          )<br>_____) | CIVIL ACTION NO. 0:06-2713-HFF-BM<br><br><br>**REPORT AND RECOMMENDATION** |

        The Plaintiff filed the complaint in this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner wherein he was denied disability benefits. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

        Plaintiff applied for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) on August 6, 2003 (protectively), alleging disability as of July 7, 2003 due to limitations caused by a stroke, a heart attack, high blood pressure, and diabetes. (R.pp. 43-45, 57, 303-305). Plaintiff's claims were denied initially and upon reconsideration. Plaintiff then requested a hearing before an Administrative Law Judge (ALJ), which was held on June 27, 2006. (R.pp. 353-378). The ALJ thereafter denied Plaintiff's claims in a decision issued July 11, 2006. (R.pp. 12-24).

---

[1] On February 12, 2007, Michael J. Astrue was sworn in as the Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue should be substituted, therefore, for Commissioner Jo Anne B. Barnhart as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of 42 U.S.C. § 405(g) (2000).



The Appeals Council denied Plaintiff's request for a review of the decision, thereby making the determination of the ALJ the final decision of the Commissioner. (R.pp. 6-8).

The Plaintiff then filed this action in United States District Court. Plaintiff asserts that there is not substantial evidence to support the ALJ's decision, and that the decision should be reversed and remanded for an award of benefits. The Commissioner contends that the decision to deny benefits is supported by substantial evidence, and that the Plaintiff was properly found not to be disabled.

## Scope of review

Under 42 U.S.C. § 405(g), the Court's scope of review is limited to (1) whether the Commissioner's decision is supported by substantial evidence, and (2) whether the ultimate conclusions reached by the Commissioner are legally correct under controlling law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Richardson v. Califano, 574 F.2d 802, 803 (4th Cir. 1978); Myers v. Califano, 611 F.2d 980, 982-983 (4th Cir. 1980). If the record contains substantial evidence to support the Commissioner's decision, it is the court's duty to affirm the decision. Substantial evidence has been defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. **If there is evidence to justify refusal to direct a verdict were the case before a jury, then there is "substantial evidence."** [emphasis added].

Hays, 907 F.2d at 1456 (citing Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966)). The Court lacks the authority to substitute its own judgment for that of the Commissioner. Laws, 368 F.2d at 642. "[T]he language of [405(g)] precludes a de novo judicial proceeding and requires that the court uphold the [Commissioner's] decision even should the court disagree with such decision as long as

2



it is supported by substantial evidence." Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

**Discussion**

A review of the record shows that Plaintiff, who was forty-two (42) years old when he alleges his disability began, has a seventh grade education and past relevant work experience as a forklift driver and gofer. (R.pp. 43, 58, 62). In order to be considered "disabled" within the meaning of the Social Security Act, Plaintiff must show that he has an impairment or combination of impairments which prevent him from engaging in all substantial gainful activity for which he is qualified by his age, education, experience and functional capacity, and which has lasted or could reasonably be expected to last for at least twelve (12) consecutive months. After a review of the evidence and testimony in the case, the ALJ determined that, although Plaintiff was unable to perform any of his past relevant work, he nevertheless retained the residual functional capacity to perform a limited range of light work,[2] and was therefore not disabled. (R.pp. 16-17, 23).

Plaintiff asserts that in reaching this decision, the ALJ erred by failing to properly assess the opinion of Plaintiff's treating physicians, Dr. David Cundey and Dr. Melvyn Haas, failed to correctly assess Plaintiff's credibility, and failed to explain his findings with respect to Plaintiff's residual functional capacity (RFC) as required by SSR 96-8p. However, after careful review and consideration of the arguments and evidence presented, the undersigned finds that there is substantial evidence in the record to support the conclusion of the ALJ that Plaintiff was not disabled as that term is defined in the Social Security Act during the relevant time period, and that the decision of the

---

[2]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b) (2005).

3



Commissioner should therefore be affirmed.

First, although Plaintiff initially claimed disability beginning July 7, 2003, the evidence showed that he did not cease working at his medium exertion job as a forklift driver until January 13, 2004. Therefore, at the hearing Plaintiff was required to amend his alleged onset date to January 13, 2004. (R.pp. 14, 357). The ALJ then determined that, although the medical evidence confirms that Plaintiff suffers from ischemic heart disease with status post mild cerebrovascular accident (a stroke) and moderate obesity, which were "severe" impairments for purposes of Plaintiff's applications, Plaintiff was still able to perform gainful employment on and after January 13, 2004, as he retained the RFC for light work with no more than occasional climbing of ramps or stairs, stooping, or crouching; no climbing of ladders, ropes, or scaffolds; no balancing, kneeling, or crawling; no concentrated exposure to extremes of temperature or humidity; and no exposure to hazardous work settings such as dangerous machinery. (R.pp. 16-17, 21, 261). In reaching this conclusion, the ALJ adopted most, but not all,³ of the findings of Dr. Charles Jones, a state agency physician who reviewed Plaintiff's medical records and assessed his residual functional capacity to work on April 15, 2004. (R.pp. 259-266). Smith v. Schwieker, 795 F.2d 343, 345 (4th Cir. 1986) [opinion of non-examining physician can constitute substantial evidence to support the decision of the Commissioner]; Johnson v. Barnhart, 434 F.3d 650, 657 (4th Cir. 2005) [ALJ can give great weight to opinion of medical expert who has thoroughly reviewed the record]; see SSR 96-6p [Agency physicians are experts in the evaluation of medical issues for purposes of disability claims].

Plaintiff's argument that the ALJ committed reversible error by improperly evaluating

---

³Dr. Jones determined that Plaintiff could occasionally balance, kneel or crawl, while the ALJ restricted Plaintiff to no balancing, kneeling or crawling. (R.pp. 16-17, 261).



the records and opinions of Dr. Cundey and Dr. Haas is without merit. Dr. Cundey is a surgeon who, after finding that Plaintiff suffered from multi-vessel coronary atherosclerosis, performed heart by-pass surgery on the Plaintiff in July 2002. (R.p. 137). This was a year and a half before Plaintiff's alleged disability onset date. Plaintiff's surgery went well, and by September 26, 2002 it was noted that Plaintiff had no orthopnea[4], PND[5] or peripheral edema, had not had a lot of chest pain, and was walking about a mile. Plaintiff was released to return to work at that time. (R.p. 227). See also (R.pp. 228-229). Plaintiff continued to be seen by Dr. Cundey thereafter, with the medical records from these visits reflecting that Plaintiff's primary problem was his poorly controlled diabetes,[6] not any problems with his heart. (R.pp. 142, 226, 231-232). Again, all of this activity occurred well before his medical condition allegedly became disabling.

      Plaintiff suffered a mild stroke in July 2003, but Dr. Cundey noted at that time that there was no evidence of any recent acute ischemia.[7] Dr. Haas, who evaluated Plaintiff for his symptoms (leading to the diagnosis that Plaintiff had sustained a "laqunar infarction in the right brain stem"), noted that Plaintiff had had "no recent chest pain, shortness of breath or palpitations." (R.p. 147). Dr. Haas noted that although Plaintiff was non-compliant with his diabetes treatment regimen,

---

[4] Orthopnea is the inability to breathe easily unless one is sitting up straight or standing erect. http://www.medterms.com/script/main/art.asp?articlekey=4671.

[5] PND is a three-letter acronym which can stand for: Paroxysmal nocturnal dyspnea, a breathing disorder caused by lying flat. http://en.wikipedia.org/wiki/PND.

[6] Plaintiff had previously been found to be an insulin dependent diabetic who had been non-compliant with his treatment regimen for this condition. (R.pp. 137, 228).

[7] Ischemia is a restriction in blood supply, generally due to factors in the blood vessels, with resultant damage or dysfunction of tissue. http://en.wikipedia.org/wiki/Ischemia.



he was in "no acute distress" with minimal adverse findings on examination other than some minimal clumsiness or weakness on the left side due to the effects of the stroke. (R.pp. 148-149). Follow-up examinations noted no significant problems. (R.pp. 203, 224-225).

On February 20, 2004 (approximately one month after Plaintiff claims his impairments became disabling) Dr. Haas noted that Plaintiff was "feeling well", "has had no further numbness [or] weakness", and that he had a regular heart rate with blood pressure of 116/43. Dr. Haas discharged Plaintiff from his care at that time, opining that "[t]he key to keeping [Plaintiff] out of further trouble is going to be control of blood pressure and blood glucose, and staying off cigarettes." Plaintiff was told that he could return "if necessary". (R.p. 202).

In April 2004 Dr. Jones completed his residual functional capacity assessment in which he opined that Plaintiff could perform light work with the limitations noted. (R.pp. 259-266). The following June (June 14, 2004) Dr. Cundey examined the Plaintiff and noted that he was in no acute distress, that his carotids were normal with no bruits, that his auscultation[8] sounded normal, and that he had no edema. Plaintiff complained of having "some angina", and of experiencing shortness of breath with effort. (R.p. 223). Notwithstanding these findings, however, Dr. Cundey completed a disability questionnaire sent to him by Plaintiff's attorney in which he opined that Plaintiff could perform no lifting, no reaching above the shoulders, and could only push or pull within a limit of one to five pounds. Dr. Cundey also stated that he "[did] not believe [Plaintiff] is capable of [driving a forklift] at the present time and suspect this will be permanent." (R.p. 205). Dr. Haas completed the

---

[8]Auscultation is the technical term for listening to the internal sounds of the body, usually using a stethoscope. http://en.wikipedia.org/wiki/Auscultation.

6



same questionnaire the following day (June 15, 2004),[9] but he opined that Plaintiff could lift up to six to ten pounds, and push or pull within a limit of eleven to twenty-five pounds. Dr. Haas also opined that Plaintiff could not engage in continuous walking or standing to exceed fifty percent of work time, a restriction not noted by Dr. Cundey.

No further visits to either of these two physicians is noted until November 7, 2005, when Plaintiff went back to see Dr. Cundey. At that time Plaintiff reported no chest pain, no shortness of breath, no edema, no asymmetrical weakness or paraesthesias, and his carotids were normal. Dr. Cundey noted that Plaintiff was again being non-compliant with his medications, which Plaintiff apparently indicated he simply could not afford. (R.p. 222).

The ALJ thoroughly reviewed this evidence in his decision, finding that Dr. Haas' treatment notes reflected progressive improvement in Plaintiff's condition with good strength, mobility, coordination, flexibility, and functioning, that there was no indication Plaintiff required follow-up neurological care or treatment, and that since this evidence persuasively contradicted the limitations in lifting, walking, or standing noted by Dr. Haas in his June 2004 opinion, that opinion was entitled to little weight. As for Dr. Cundey, the ALJ found that Dr. Cundey's progress notes showed the Plaintiff was not experiencing any angina which was progressive in nature, and generally did not reveal any abnormal findings which would support the limitations set out in his assessment; that Plaintiff had had good results from his by-pass surgery, and that accordingly he gave no weight to Dr. Cundey's conclusions with respect to Plaintiff's limitations as set forth in his June 14, 2004 disability report. (R.pp. 21-22). Again, the undersigned does not find any reversible error in these findings. See Craig v. Chater, 76 F.3d 585, 589-590 (4th Cir. 1996) [rejection of treating physician's

---

[9]Dr. Haas had not, however, seen the Plaintiff since February 2004. (R.p. 206).



opinion justified where the treating physician's opinion was inconsistent with substantial evidence of record]; Castellano v. Secretary of Health & Human Servs., 26 F.3d 1027, 1029 (10th Cir. 1994) [physician opinion that a claimant is totally disabled "is not dispositive because final responsibility for determining the ultimate issue of disability is reserved to the [Commissioner]"].  Indeed, while Plaintiff complains about the ALJ's rejection of the June 2004 opinions of Dr. Haas and Dr. Cundey, it is worth noting that these two opinions are not only inconsistent with the findings of Dr. Jones and with the ALJ's conclusion as to Plaintiff's RFC,  they are inconsistent with each other. The ALJ properly exercised his authority in evaluating and weighing this evidence in reaching his decision. See Hays, 907 F.2d at 1456 [It is the responsibility of the ALJ to weigh the evidence and resolve conflicts in that evidence]; see also Trenary v. Bowen, 898 F.2d 1361, 1364 (8th Cir. 1990) [Courts should properly focus not on a claimant's diagnosis, but on the claimant's actual function limitations].

    As for the evaluation of Plaintiff's subjective testimony, the decision reflects that the ALJ thoroughly reviewed the medical evidence, Plaintiff's own statements as to his condition, and the inconsistency of allegations and the extent of Plaintiff's daily activities when compared with the objective medical evidence to find that Plaintiff's description of the severity of his limitations were not totally credible. See generally, (R.pp. 16-22).  While more detail can almost always be provided in these types of reports, the undersigned can find no reversible error in the ALJ's treatment of the Plaintiff's subjective testimony in conjunction with the objective medical evidence of record, nor do I find that the ALJ failed to consider all of Plaintiff's impairments or conducted a flawed credibility analysis. Dryer v. Barnhart, 395 F.3d 1206, 1211( 11th Cir. 2005) [ALJ not required to specifically refer to every piece of evidence in the decision] . Further, the record in this case supports the ALJ's



findings and conclusions. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964) [court scrutinizes the record as a whole to determine whether the conclusions reached are rational]; Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) [the mere presence of impairments does not automatically entitle a claimant to disability benefits, there must be a showing of related functional loss]; See Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1993) [ALJ may properly consider inconsistencies between a plaintiffs testimony and the other evidence of record in evaluating the credibility of the plaintiffs subjective complaints]; Jolley v. Weinberger, 537 F.2d 1179, 1181 (4th Cir. 1976) [finding that objective medical evidence, as opposed to the claimant's subjective complaints, supported an inference that he was not disabled]; Mickles v. Shalala, 29 F.3d 918, 925-926 (4th Cir. 1994) [In assessing the credibility of the severity of reported subjective complaints, consideration must be given to the entire record, including the objective and subjective evidence]; Cruse v. Bowen, 867 F.2d 1183, 1186 (8th Cir. 1989) ["The mere fact that working may cause pain or discomfort does not mandate a finding of disability"].

Finally, with respect to Plaintiff's RFC, the decision reflects that the ALJ thoroughly discussed the medical records and findings of Plaintiff's physicians, the state agency physician, as well as Plaintiff's own testimony, noting the essentially normal results of his physical examinations and intact neurological function with no detectible residuals from his mild stroke in July 2003, and that even that his diabetes was generally controlled when properly medicated. While the ALJ quite properly found that Plaintiff could not return to his past occupations, which had the requirements of medium work[10], he concluded that Plaintiff could perform light work with the limitations noted,

---

[10]"Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

9



which were generally consistent with the conclusions of the state agency physician. This review, discussion and analysis satisfied the requirements of SSR 96-8p. *Cf.* Roberts v. Masanari, 150 F.Supp.2d 1004, 1010 (W.D.Mo. 2001); Buchholtz v. Barnhart, 98 Fed.Appx. 540, 547 (7th Cir. 2004); Delgado v. Commissioner of Social Serv., 30 Fed.Appx. 542, 547-548 (6th Cir. 2002). Plaintiff's argument that the ALJ should have gone into even greater detail with respect to his findings is without merit. Dryer, 395 F.3d at 1211 [ALJ not required to specifically refer to every piece of evidence in the decision]; Rogers v. Barnhart, 204 F.Supp.2d 885, 889 (W.D.N.C. 2002). See also Osgar v. Barnhart, No. 02-2552, 2004 WL 3751471 at *5 (D.S.C. Mar. 29, 2004), aff'd, 117 Fed.Appx. 896 (4th Cir. Jan. 5, 2005); *cf.* Brown v. Chater, 87 F.3d 963, 966 (8th Cir. 1996) ["An arguable deficiency in opinion -writing technique is not a sufficient reason for setting aside an administrative finding where...the deficiency probably had no practical effect on the outcome of the case"], quoting, Benskin v. Bowen, 830 F.2d 878, 883 (8th Cir. 1987).

**Conclusion**

Substantial evidence is defined as " ... evidence which a reasoning mind would accept as sufficient to support a particular conclusion."  Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984).  As previously noted, if the record contains substantial evidence to support the decision (i.e., if there is sufficient evidence to justify a refusal to direct a verdict were the case before a jury), this Court is required to uphold the decision, even should the Court disagree with the decision. Blalock, 483 F.2d at 775.

Under this standard, the record contains substantial evidence to support the conclusion of the Commissioner that the Plaintiff was not disabled within the meaning of the Social Security Act

10



during the relevant time period. Therefore, it is recommended that the decision of the Commissioner be **affirmed**.

_____
Bristow Marchant
United States Magistrate Judge

Columbia, South Carolina

September 12, 2007



11